SCHOTT, Judge.
Defendants have appealed from a judgment awarding plaintiff, Eunice Burns, workmen’s compensation benefits of $61.11 per week for 100 weeks with statutory penalties and attorney’s fees. Plaintiff has answered the appeal seeking benefits for total and permanent disability.
According to plaintiff, while she was engaged in her occupation of cleaning up defendant’s office on April 11, 1975, using a small knife to remove paint or gum from a plexiglass piece over a carpeted floor she somehow slipped and stabbed herself in the thigh. She was alone on the floor at the time and immediately went to the floor below where she got assistance from a coworker and was eventually brought to the hospital for emergency treatment.
The compensation insurer of her employer paid compensation for the period of April 20 through April 30, paid the fee for the physician who initially treated her, but refused to pay the hospital bill in the amount of $806.70. In making his award, the trial court made the following findings:
“The Court is satisfied from the evidence adduced during the trial of this cause that:
“Plaintiff did injure herself while working in the course and scope of her employment.
“That the wound in her thigh was not self-inflicted, but was the result of an *249 accident while she was performing the work assigned to her, and that the claim is therefore compensable.
“That she does have some residual affects from the accident which has aggravated a pre-existing condition, hence permanently impairing the usefulness of a physical function.
“That plaintiff is not therefore totally and permanently disabled.
“That it was arbitrary and capricious on defendant-insurer’s part to fail to pay compensation to plaintiff during plaintiff’s inability to work, and especially to refuse to pay the medical costs of plaintiff’s treatment for the injury suffered.”
Defendants have specified error on the part of the trial court in concluding that, 1) plaintiff sustained a compensable accident, 2) her injury aggravated a pre-existing condition causing the impairment of a physical function and entitling her to an award, and 3) the actions of the defendants were arbitrary and capricious so as to warrant an award of penalties and attorney’s fees.
We have no difficulty in disposing of defendants’ first specification of error. While plaintiff’s testimony was rather vague as to how this accident happened there is no evidence to suggest that the injury was inflicted by anyone else and there is no reasonable basis to suppose that it was intentionally self-inflicted. Her own testimony that it was an accidental injury together with the testimony of her co-worker to whom she ran for assistance are sufficient to support the conclusion of the trial court in this respect.
In order to consider the second specification of error, it is necessary to consider in some detail the testimony of plaintiff and the various physicians who examined her after the accident. When she was admitted to the hospital she was treated by Dr. Michael J. Mullin. He testified as follows: He found a stab wound about two e.m. in length with a moderate size hemato-ma surrounding the wound. There was active bleeding and the hematoma was expanding. Because of the location of the wound right over the femoral artery exploration of the wound was indicated. On the following date local anesthesia was administered and the stab wound was excised in an incision approximately five to six c.m. long. The saphenous vein had been lacerated and a large amount of hematoma infiltrated the muscle. There was no evidence of injury to the femoral artery itself. The wound was irrigated and was closed with sutures. She was discharged from the hospital on April 15 with no complications noted at that time. He saw plaintiff on April 23 when the sutures were removed and on May 5 when he discharged her. He felt that she had a substantial recovery from her injury and was able to return to work without residual except for decreased sensation in her thigh.
Plaintiff testified that she tried to return to work for defendant a few months later but they would not take her back, and she then took a job as a janitor at a hotel, where she worked for three or four months. She said that her leg bothered her to the extent that she was unable to hold this job, and that stooping and bending her leg caused her knee to swell. She testified that before this accident she never had any difficulty with her leg and at the time of the trial on June 17, 1976, she was still unable to perform the type of work she had been doing prior to the accident without difficulty-
On June 2, 1975, plaintiff was examined by Dr. Morris W. Levy, a surgeon. He testified as follows: He found a decrease of sensation to pin prick on the medial aspect of the right thigh and knee but the knee was stable otherwise. She had some weakness in the leg and could not straighten it out with full motion, so he started her on exercises to increase the strength of the leg. On July 24 he found that she could flex her leg quite well but that she still had anesthesia along the right leg, that is, there was no feeling. However, she could go back to work but nothing could be done at that time for the anesthesia. He examined her for a third time on September 5,1975, when she complained that her knee “gives way.” On examination he found that the knee was *250 swollen and tender along the medial aspect of the knee and right thigh. He prescribed an anti-inflammatory drug and recommended that she continue with exercising and working. He next examined her on September 18 when she said she was somewhat better and the swelling had decreased. On October 2 he saw her and although she was complaining that her knee and leg hurt her on occasions he could not find any reason for her complaints. On March 12, 1976, she returned to him complaining of limited motion in her leg as well as shooting pains. The pin prick test revealed that feeling was returning to her leg and he concluded that she was suffering from neuritis, which is an inflammation of the nerve fibers resulting from the two ends of the nerve growing together. He stated that pain resulted from motion and stretching of the nerves. He explained the swelling of her knee to be the result of the rehabilitation of the muscles, that is, as they are stretched from activity the entire muscle system became inflamed. Dr. Levy explained that the nerves regenerated themselves from the date of her accident and would take from 12 to 15 months for complete growth to occur, and that in the process of working she might irritate the nerves causing pain until complete regeneration of the nerves occurred. During the course of his treatment Dr. Levy had prescribed boot exercises for plaintiff, which were taken 33 times between June 2 and July 24, 1975. These consisted of her straightening the leg while wearing a boot.
On July 17, 1975, plaintiff was seen by Dr. Russell Grunsten, an orthopedic surgeon, and on the basis of his examination he concluded that plaintiff’s laceration had damaged the saphenous nerve with resulting numbness corresponding to the distribution of this nerve below the knee area. X-ray studies revealed osteoarthritic changes in her knee, but he felt that she could resume her normal activities. She had permanent damage to the saphenous nerve which he rated as a 5% permanent partial disability, He next examined her on October 28, 1975, and still found numbness corresponding to the distribution of the saphenous nerve. He also felt that she was experiencing symptoms of osteoarthritic origin in the knee in addition to the symptoms related to the nerve damage. On November 25 Dr. Grunsten again saw plaintiff and he found moderately advanced arthritic change in the right knee which appeared to him to be of long standing. He felt that the functioning status of the leg had returned to its pre-injury condition and that she was left with the 5% permanent partial disability in view of the damage to the sensory nerve components. He did not feel that this would interfere with her duties as a janitor although he acknowledged that this was an uncomfortable situation for her. He did not see any connection between the arthritis and this numbness in her leg, but he felt that the boot exercises could have caused a temporary flareup of the arthritis. In response to a question under cross examination as to whether plaintiffs nerve problem was a functional disability, Dr. Grun-sten stated: “It’s not functional in the sense it interferes with the range of motion or power but, only in the sense it is an uncomfortable feeling. There is not the normal anatomy in the leg that existed prior.”
In answer to a question by the trial judge as to the severity of the pain caused by this nerve situation the doctor stated that it was “more a pain of annoyance, irritating, rather than incapacitating.”
Based on the foregoing testimony there was insufficient evidence to support plaintiff’s theory that she is totally and permanently disabled as a result of this accident. There is no proof that a pre-existing arthritic condition was aggravated. On the other hand, the testimony with respect to the damage to plaintiff’s nerve system does support the trial judge’s finding that the usefulness of the physical function of her leg was impaired, entitling plaintiff to recovery under the provisions of LSA-R.S. 23:1221(4)(p).
The final error specified by defendants is the award of penalties and attorney’s fees. From the reasons for judgment *251 given by the trial judge, he was greatly influenced by the refusal of defendants to pay the medical costs of plaintiff. The evidence shows that plaintiff was paid compensation initially for ten days and Dr. Mul-lin’s bill was paid. Yet, defendants never paid the hospital bill incurred by plaintiff in the amount of $806.70. Defendants’ adjuster testified that his investigation brought up the question of whether the injury was compensable or whether it was self-inflicted. Yet he admitted that he had no evidence to support an intentionally self-inflicted wound. From the record we can see no reasonable basis whatsoever for defendants even to suspect that this injury was self-inflicted and it was surely arbitrary and unreasonable for them not to have paid this hospital bill. Furthermore, the evidence shows that defendants were satisfied to rely fully and finally on the opinion of Dr. Mullin, who last saw plaintiff on May 5, despite the fact that plaintiff was suffering from some residuals from this accident necessitating active treatment by Dr. Levy. In view of his testimony as well as Dr. Grunsten’s, plaintiff was still having residual discomfort from this accident throughout the period of time when she was examined by these physicians. There was no basis for defendants to decline payment of their bills.
Defendants’ attitude with respect to the bills generally characterized their* treatment of plaintiff’s entire claim. Until May 21, 1976, less than a month before the trial they had no medical examination performed on plaintiff. At that time she was examined by Dr. Eugene Dabezies. He found the scar on the medial aspect of the thigh and an area of dysesthesia, or decreased sensation, in the medial aspect of the knee probably resulting from the laceration severing one of the small branches of the saphenous nerve. He found the osteoar-thritic process which he felt was unrelated to the accident and concluded that there was no functional impairment of the usage of the leg. He explained that there had been no injury to a nerve which was responsible for muscle function and the sensory deficit was not in an important area. He explained that dysesthesia is a somewhat uncomfortable sensation which would decrease over a period of time.
Thus, defendants’ own expert agreed essentially with Drs. Levy and Grunsten to the effect that there was some discomfort due to this nerve deficit which led her to seek further medical treatment after she was discharged by Dr. Mullin, and yet defendants steadfastly and stubbornly declined payment of any further medical expenses. Under these circumstances we cannot say that the trial judge erred in finding that defendants’ overall conduct was arbitrary and unreasonable.
Plaintiff has asked that we increase her attorney’s fee, but we have concluded that the trial judge’s award of $2,000 is adequate under all of the circumstances. The judgment appealed from is affirmed.
AFFIRMED.